```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

WILLIAM AND DARLENE BAYLE        *         CIVIL ACTION

VERSUS                           *         NO: 08-1319

ALLSTATE INSURANCE COMPANY       *         SECTION: "D"(3)
```

**ORDER AND REASONS**

Before the court are the following motions filed by Defendant Allstate Insurance Company:

(1) **Motion for Summary Judgment (Doc. No. 13)**; and

(2) **Motion to Exclude Proposed Expert Testimony of Steve Hitchcock (Doc. No. 11)**.

Plaintiffs, William Bayle and Darlene Bayle, filed memoranda in opposition. The motions were set for hearing on Wednesday, November 19, 2008, and the court heard oral argument from counsel on Tuesday, November 18, 2008. Now, having considered the memoranda and argument of counsel, the record, and the applicable law, the court finds that both motions should be granted.

**I. Background**

As a result of Hurricane Katrina and its aftermath,

Plaintiffs' home located in Chalmette, Louisiana (St. Bernard Parish) was heavily damaged from flood waters, and it also received some wind damage. Plaintiffs did not repair their home, but ultimately sold it to Murphy Oil for $64,000.[1]

Under their flood insurance policy issued by Allstate, Plaintiffs were paid the policy limits of $75,000 for structure and $30,000 for contents (for a TOTAL of $105,000 in flood damages). Under their homeowner's policy issued by Allstate, Plaintiffs were paid $3,628.87 for wind damage to the house,[2] $8,804.22 for wind damage to personal property, and $5,127.64 in additional living expenses (for a TOTAL $17,560.73 under the subject homeowner's policy). Thus, under both their flood policy and homeowner's policy, Plaintiffs were paid a combined total of $78,628.97 for structural damage.

The subject homeowner's policy provides that if the Plaintiffs do not repair the damaged property, payment under the policy "will be on an actual cash value basis."[3]  (*See* Defendant's Ex. H

---

[1] According to Plaintiff Darlene Bayle, an oil tower owned by Murphy Oil collapsed as a result of Hurricane Katrina, and "oil from this tower pervaded the neighborhood and even entered our home." (*See* Affidavit of Darlene Bayle attached to Plaintiff's Opp.).

[2] The subject homeowner's policy had "Dwelling Protection-with Building Structure Reimbursement Extended Limits" of $84,000, with a $500 "Other Peril Deductible" and a $500 "Hurricane Deductible."  (*See* Defendant's Ex. H, Policy, Bate-stamped page no. 3001-000009).

[3] Actual cash value is the "[r]eplacement cost minus normal depreciation." *Black's Law Dictionary*, 8th Ed., p. 1586.

attached to Defendant's Original Memorandum, Policy at bate-stamped no. 3001-000038).  According to Defendant's expert, "the actual cash value of damages" is "$108,220.00."  (*See* Defendant's Ex. C, attached to Defendant's Reply Memo.).

Plaintiff offers no evidence of "actual cash value" of their home.  Instead, Plaintiffs' expert has rendered an opinion setting forth the "Estimated Replacement Cost" (in the amount of $182,863.13).[4] (*See* Defendant's Ex. J, original Hitchcock Report).

In the instant lawsuit, Plaintiffs seek additional damages under their homeowner's policy, as well as statutory penalties and other relief under LSA-R.S. 22:658 and 22:1220.  In its Motion for Summary Judgment, Allstate argues, *inter alia*, that it is entitled to summary judgment because Plaintiffs cannot segregate the amount of their covered losses from excluded losses.  The court agrees and because there is no genuine issue of material fact, Defendant is entitled to judgment as a matter of law.  Further, as discussed below, the court finds that Defendant's Motion to Exclude Proposed

---

The subject policy provides in part that:

Actual Cash Value.  If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis.  This means that there may be a deduction for depreciation.

(*See* Defendant's Ex.H attached to Original Memo., Policy at bate-stamped page 3001-000038).

[4] Replacement cost is "[t]he cost of a substitute asset that is equivalent to an asset currently held.  The new asset has the same utility but may or may not be identical to the one replaced."  *Black's Law Dictionary*, 8th Ed., p. 373.

Expert Testimony of Steve Hitchcock should also be granted.

## II.  Legal Analysis

At the outset, the court finds, as a matter of law, that the flood exclusion provision in Plaintiff's homeowner's policy excludes flood damage regardless of the cause of the flooding. Thus, Plaintiffs are only allowed to recover damage from wind, or some other covered peril.  However, because both covered and non-covered perils contributed to Plaintiffs' loss, Plaintiffs are required to segregate the amount of their covered losses from excluded losses. *Perrien v. State Farm Inc. Co.*, 2008 WL 2705455 at *2-3 (E.D. La. July 9, 2008)(Duval, J); *Hyatt v. State Farm Ins. Co.*, 2008 WL 544182 at *2 (E.D. La. Feb. 25, 208)(Vance, J.).

The only evidence that the Plaintiffs have concerning their structural damages is the "Estimated Replacement Cost" (totaling $182,863.13 to repair the entire home), as set forth in the report of their expert, Steve Hitchcock.  (*See* Defendant's Ex. J, Report of Steve Hitchcock).   However, Mr. Hitchcock does not segregate damages and he gives no opinion as to the cause of any of the Plaintiffs' damage (whether from wind, flood, oil or any other cause).  (*Id.*).[5]

---

[5] Plaintiffs also testified in their respective depositions that they could not segregate wind from flood damage. (*See* Deposition of Darlene Bayle, Defendant's Ex. A, pp 64:21-23 & 76:20-24; and Deposition of William Bayle, Defendant's Ex. K, pp. 17:24-25, 18:1-3, & 34:9-12).

Further, Plaintiffs have offered no other evidence to segregate covered losses from excluded losses, and the court will not allow Plaintiff's expert to now opine on the segregation of damages because such testimony would impermissibly expand the scope of his report, and it would be untimely and prejudicial to Defendants at this juncture to permit such testimony outside the scope of Mr. Hitchcock's report.[6]  Thus, Plaintiffs are not entitled to further payment for structural damage under their homeowner's policy.

Plaintiffs are also not entitled to "Additional Living Expenses" (ALE) under their homeowner's policy because Plaintiffs have offered no competent summary judgment evidence to show that wind (or some other covered peril), as opposed to flooding, rendered their home uninhabitable.[7]  Similarly, Plaintiffs are not entitled to recover under their homeowner's policy on their contents claim because they have presented no evidence supporting that a covered peril (as opposed to flooding) caused damaged their

---

[6] Plaintiffs' deadline to submit expert reports was October 9, 2008. The Pre-Trial Conference was set for January 7, 2009 , and the Trial was set for the week of January 26, 2009.

The report of Steve Hitchcock is also silent regarding the claims handling of Allstate. The court will also not allow Mr. Hitchcock to supplement his opinion to discuss this issue, because again, such testimony/opinion would impermissibly expand the scope of his report, and it would be untimely and prejudicial to Defendant.

[7] The court notes that William and Darlene Bayle are brother and sister, who owned the subject property. While Darlene lived in the subject house, William did not live there and he testified that he is not making an ALE claim. (*see* Ex. K, p. 16:9-11).

personal property.[8]

Further, because Plaintiffs cannot establish a valid underlying contract claim under their homeowner's policy, they are not entitled to relief under LSA-R.S. 22:658 and LSA-R.S. 22:1220.[9] Plaintiffs have also offered no competent evidence that Allstate acted arbitrarily or capriciously in refusing to pay Plaintiffs any additional sums under their homeowner's policy and there is no evidence that Allstate failed to pay an undisputed amount of the Plaintiffs' claim.

Even if Plaintiff could survive summary judgment on their contractual claims (which they cannot), Plaintiff would not be entitled to damages for mental anguish or emotional distress under their homeowner's policy.  Louisiana Civil Code Art. 1998; *Sher v. Lafayette Ins. Co.*, 988 So.2d 186 (La. 2008); *Dixon v. First Premium Ins. Group*, 934 So.2d 134 (La. App. 1st Cir. 2006).

Finally, the court rejects Plaintiffs' argument that Allstate waived the "actual cash value" terms of its policy when it paid

---

[8] Plaintiff William Bayle testified that he is not making a claim for personal property because he did not keep personal property at the insured residence.  (*See* Defendant's Ex. K, p. 18:11-19).

[9] If Plaintiffs had a viable claim for statutory penalties, they could not recover penalties under both LSA-R.S. 22:658 and LSA-R.S. 22:1220.  Because LSA-R.S. 22:1220 provides a greater penalty, LSA-R.S. 22:1220 supersedes LSA-R.S. 22:658.  *Calogero v. Safeway Ins. Co.*, 753 So.2d 170, 174 (La. 2000).

Plaintiffs $3,628.87 of "replacement cost" for wind damage.[10] Further, Plaintiffs have made no showing that, with its payment of $3,628.87, Allstate actually intended to relinquish its right to demand compliance with the terms of the policy (including the provision limiting Plaintiffs' recovery to the actual cash value of their property) or that Allstate's conduct was so inconsistent with the intent to enforce the right as to induce a reasonable belief that the right has been relinquished. *Arceneaux v. Amstar Corp.*, 969 So.2d 755, 767 (La.App. 4th Cir. 2007).

Accordingly;

**IT IS ORDERED** that Defendant Allstate Insurance Company's **Motion for Summary Judgment (Doc. No. 13**) be and is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Allstate Insurance Company's **Motion to Exclude Proposed Expert Testimony of Steve Hitchcock (Doc. No. 11)**, be and is hereby **GRANTED,** because Mr. Hitchcock's proposed testimony would impermissibly expand the scope

---

[10]   On Allstate's Estimate of structural damages, the actual cash value ($4,128.87) and replacement cost ($4,128.87) were identical. (*See* Allstate's Estimate, Ex. E, attached to Allstate's Reply). Allstate apparently deducted the $500 deductible when it paid Plaintiffs ($3,628.87 = $4,128.87 - $500).

> As previously noted in fn. 3, the subject policy provides in part that:
>
> Actual Cash Value.  If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. *This means that there may be a deduction for depreciation.* (italics added)

(*See* Defendant's Ex. D. attached to Reply Memo., Policy at bate-stamped page 3001-000038).

of his report.

**IT IS FURTHER ORDERED** that the claims of Plaintiffs, Darlene and William Bayle, against Allstate be and are hereby **DISMISSED** with prejudice, and at Plaintiffs' costs.

New Orleans, Louisiana, this **21st** day of **November**, **2008**.

                                            A.J. McNAMARA
                                 UNITED STATES DISTRICT JUDGE